In re the MARRIAGE OF Rebecca J. MUGGE, Appellant,

and

Mark A. Mugge, Appellee.

No. 01CA2159.

Colorado Court of Appeals, Div. V.

Feb. 13, 2003.

Jeffrey W. Ludwig, Highlands Ranch, for Appellant.

Martin D. Brown, PLLC, Martin D. Brown, Littleton, for Appellee.

Opinion by Judge WEBB.

In this post-dissolution of marriage proceeding, Rebecca J. Mugge (mother) appeals from the trial court's order modifying the child support obligation of Mark A. Mugge (father). This appeal concerns the exclusion of father's special early retirement benefit from the calculation of his gross income for child support purposes. We affirm.

The parties' marriage was dissolved by decree in 1999. The separation agreement required father to pay child support of $636.64 per month.

In 2001, mother filed a motion to modify that obligation, contending, as here relevant, that there had been a substantial and continuing change of circumstances regarding the parties' financial affairs resulting from father's receipt of a special early retirement benefit. She asserted this benefit should be included as gross income under the child support guidelines.

The parties agree that in 2000 father, then age 51, elected to participate in his employer's Voluntary Enhanced Retirement Program (VERP). Father's employer offered that election because it planned to close the facility where he worked, and the VERP enabled him to avoid the risk of a later layoff with fewer retirement benefits.

Father provided the employer with a general release of all claims relating to his employment and voluntarily retired, as required by the VERP. The employer then valued his account in its pension plan at $104,480.40, consisting of the then present value of his accrued normal retirement benefits plus a $64,172.90 special early retirement benefit.

The VERP benefit arose from recalculating father's normal retirement benefits by adding three years to his service and three years to his age. Father had no discretion over receiving the VERP benefit as a direct payment rather than a credit to his account in the pension plan.

Because he retired from the employer, however, father had to withdraw his account from the employer's pension plan. He could elect a lump sum distribution, roll over the entire account into another qualified pension plan, or begin receiving a monthly annuity. Father could not elect a lump sum or annuity payment of the VERP benefit while rolling over his accrued normal retirement benefits.

Father chose the rollover option, which deferred any income tax, because he believed it provided him the greatest financial benefit. Mother does not assert that this election was unreasonable or in bad faith.

Following an evidentiary hearing, the magistrate determined that inclusion of the VERP benefit would unfairly impact father, create adverse tax consequences for him, unnecessarily complicate the support computation, and conflict with the public policy favoring preparation for retirement. The magistrate further found that such inclusion would be inequitable, unjust, or inappropriate and therefore determined that a deviation from the guidelines was warranted. The magistrate then calculated father's support obligation without considering the enhanced benefit and reduced his support obligation to $514.61 per month.

Mother sought timely review from the trial court, which upheld the magistrate's order.

The trial court found the VERP benefit was not severance pay, noting that the benefit was not paid as a wage substitute while father looked for another job. The trial court also found the VERP benefit was not income, interpreting the reference to "pensions and retirement benefits" in the definition of "gross income" under § 14–10–115(7)(a)(I)(A), C.R.S.2002, as encompassing only those employer pension benefits paid out to an employee upon retirement, and not employer contributions to a pension plan.

The trial court concluded the magistrate correctly excluded the VERP benefit from the child support calculation. As to mother's claim that the magistrate erred in deviating from the guidelines without first establishing a presumed child support amount, the court concluded the issue was moot.

## I. Gross Income

Mother contends the trial court erred as a matter of law in excluding the VERP benefit from gross income. We disagree.

For purposes of the child support guidelines, "gross income" means the actual gross income of a parent determined from any financial source. Section 14–10–115(7)(a)(I)(A); *In re Marriage of Laughlin,* 932 P.2d 858 (Colo.App.1997). The phrase "income from any source," as used in the statute, is to be broadly construed and includes "all payments from a financial resource, whatever the source thereof." *In re Marriage of Armstrong,* 831 P.2d 501, 502 (Colo.App.1992).

The statute identifies many income sources, among them "wages," "severance pay," and "pensions and retirement benefits, including but not limited to those paid pursuant to [various Colorado statutes]." It also provides that the list is not exclusive. However, the determination of income for child support purposes under the guidelines is not controlled by definitions of gross income used for federal or state income tax purposes. *In re Marriage of Fain,* 794 P.2d 1086 (Colo.App.1990).

In light of the statutory language, our resolution of mother's contention that the VERP benefit constitutes income for child support purposes requires that we answer four questions: first, is the VERP benefit severance pay; second, is the VERP benefit an employer contribution to pension and retirement benefits; third, should an undistributed employer contribution be treated as income; and fourth, does father's option to elect a lump sum distribution or monthly annuity payments of his retirement account, including the VERP benefit, mean that the VERP benefit should be credited as income?

### A. Severance Pay

The record supports the trial court's finding that the VERP benefit was not severance pay because it was not merely a salary substitute while father searched for another job. The requirements that father voluntarily retire rather than be terminated and that he provide a general release of the employer distinguish the VERP from a typical severance pay program. *See In re Marriage of Holmes,* 841 P.2d 388 (Colo.App.1992).

Accordingly, we conclude the VERP benefit did not constitute severance pay includable within the statutory definition of gross income. *See In re Marriage of Heupel,* 936 P.2d 561 (Colo.1997) (military early retirement benefit not severance pay).

### B. Contribution to Pension and Retirement Benefit

The record also supports the trial court's finding that the VERP benefit was an employer-contributed pension or retirement benefit. The employer denominated this benefit as a retirement benefit, credited the benefit to father's retirement account in its pension plan, and calculated the amount using age and years of service.

Early retirement programs "are meant to compensate for the loss of the right to receive retired pay in the future" and are not "compensation for lost future *income.*" *In re Marriage of Heupel, supra,* 936 P.2d at 569, 571.

Hence, we conclude that the VERP benefit falls within the category of "pensions and retirement benefits" under § 14–10–115(7)(a)(I)(A).

### C. Undistributed Employer Contribution

We next consider whether the VERP benefit constituted gross income under § 14–10–115(7)(a)(I)(A), before it was distributed to father. We conclude that it did not.

Whether an employer's contributions to pension or retirement benefits, not yet distributed to an employee, constitute gross income under the child support guidelines presents a statutory interpretation issue of first impression in Colorado.

Statutory interpretation is a question of law that we review de novo. *Colo. State Bd. of Accountancy v. Paroske,* 39 P.3d 1283 (Colo.App.2001). Our responsibility when interpreting a statute is to determine the General Assembly's intent. We begin with the language of the statute, *People v. Cooper,* 27 P.3d 348 (Colo.2001), which is

afforded its ordinary and common meaning. *Bd. of County Comm'rs v. Vail Assocs., Inc.,* 19 P.3d 1263 (Colo.2001).

█ We construe statutes as a whole, giving effect to every word. *Bd. of County Comm'rs v. Vail Assocs., Inc., supra.* Strained or forced constructions are disfavored. *Martin v. Montezuma–Cortez Sch. Dist. RE–1,* 841 P.2d 237 (Colo.1992).

█ Further, we presume that the General Assembly meant what it clearly said, *Askew v. Indus. Claim Appeals Office,* 927 P.2d 1333 (Colo.1996), and did not use language idly. *See Colo. Ground Water Comm'n v. Eagle Peak Farms, Ltd.,* 919 P.2d 212 (Colo. 1996).

█ If statutory language is ambiguous, or if the statute appears to conflict with other provisions, we may look to extrinsic factors, such as prior law, the consequences of a given construction of a statute, the end to be achieved by the statute, and legislative history. *Grant v. People,* 48 P.3d 543 (Colo. 2002); *People v. Cooper, supra.*

As originally enacted, § 14–10–115(7)(a)(I)(A) included "pensions" as gross income. In *Brown v. Central City Opera House Ass'n,* 36 Colo.App. 334, 336, 542 P.2d 86, 88 (1975), *aff'd with modification,* 191 Colo. 372, 553 P.2d 64 (1976), the division cited *Webster's Third New International Dictionary* to define "pension" in another context, adding that the term also "includes payments made regularly to any person even for current services."

"Pension" means "a fixed sum paid regularly to a person ... following his retirement from service" or "the portion of an employee's retirement income provided by the employer's contributions under a contributory plan." *Webster's Third New International Dictionary* 1671 (1976); *see also Black's Law Dictionary* 1155 (7th ed. 1999)("Pension" is "a fixed sum paid regularly to a person ... as a retirement benefit.").

In 1996, the General Assembly added to the definition of "pensions" the phrase, "and retirement benefits, including but not limited to those paid pursuant to" various statutes. Colo. Sess. Laws 1996, ch. 130 at 595. In our view, the reference "to those paid" is consistent with the definitions of a pension as an amount paid.

Most jurisdictions addressing the question have held that undistributed employer contributions to pension and retirement plans do not constitute income for purposes of calculating child support. *See, e.g., Campbell v. Campbell,* 635 So.2d 44 (Fla.Dist.Ct.App. 1994); *Ballard v. Davis,* 259 A.D.2d 881, 686 N.Y.S.2d 225 (1999); *Jordan v. Brackin,* 992 P.2d 1096 (Wyo.1999). *But see Shipley v. Shipley,* 509 N.W.2d 49 (N.D.1993) (contributions by employer to husband's pension plan were income).

These cases note that, as here, the employers determined the amounts of their pension plan contributions and the employees did not have the option of directly receiving the amounts as wages.

█ We are persuaded by these decisions and conclude that prior to any distribution, the employer's VERP contribution to father's account in its pension plan did not constitute gross income for consideration under the child support guidelines.

### D. Father's Option to Elect Distribution

Mother asserts that because father could have elected a lump sum distribution or monthly annuity payments of his account upon retirement from the employer, the VERP benefit included therein should be considered as unrealized income, even though he chose to roll over the entire balance into another qualified pension plan. We disagree.

*Ennis v. Venable,* 689 So.2d 165 (Ala.Civ. App.1996), on which mother relies, deals with the employee's voluntary request that his employer deduct from wages already earned a contribution to his individual retirement account. *See generally* L. Morgan, *Child Support Guidelines, Interpretation and Application* § 2.03[2] at 2–64 (2002)(collecting cases treating employees' voluntary contributions of wages to retirement accounts as unrealized income for calculation of child support).

The cases cited by Morgan, *supra,* emphasize that employees would have realized income from portions of their wages which

were instead voluntarily contributed to retirement plans. *See, e.g., Marsh v. Fieramusca,* 150 Misc.2d 776, 569 N.Y.S.2d 1012 (1991); *Parzynski v. Parzynski,* 85 Ohio App.3d 423, 620 N.E.2d 93 (1992). However, the parties have cited no case, nor have we found one, applying this analysis to an undistributed employer-funded retirement account, based on an employee's unexercised option to withdraw the balance.

Because the question of treating an undistributed retirement account as unrealized income has not been decided in Colorado, we first look to cases in which, under various other circumstances, divisions of this court have considered unrealized income in determining child support. *See, e.g., In re Marriage of Laughlin, supra* (interest income was imputed based on a capital gain that had been partially expended); *In re Marriage of Bregar,* 952 P.2d 783 (Colo.App.1997)(same); *In re Marriage of Tessmer,* 903 P.2d 1194 (Colo.App.1995)(interest and dividends on a retirement account were income, although not withdrawn and subject to penalty if withdrawn); *cf. In re Marriage of Stress,* 939 P.2d 500, 502 (Colo.App.1997)("Incremental taxes withheld are also income [although] unavailable to the recipient....").

However, like the out-of-state cases discussed above, these Colorado cases do not involve facts closely analogous to the employer-funded early retirement benefit before us, and the reasoning of some of these cases has limited application here.

Some unrealized income cases explain that a parent cannot limit his or her child support obligation by a voluntary decision to avoid income that, if realized, would clearly constitute gross income for child support purposes. *See, e.g., In re Marriage of Bregar, supra.* Here, father's decision to roll over his retirement account into another qualified plan was voluntary only in part. Upon retirement, father had to withdraw his retirement account from the employer's pension plan and then either roll it over or receive a distribution. He was not in the position of realizing income if he did nothing.

In one unrealized income case, the panel assumed that, had the marriage remained intact, the income in dispute would have been available to support the children. *See In re Marriage of Armstrong, supra.* However, here, in contrast, the VERP benefit in father's retirement account would not have been available for child support in the hypothetical intact family unless he elected lump sum distribution of or monthly annuity payments from his retirement account.

Father's election to continue the retirement benefits character of his account, including the VERP benefit, by rolling the entire account over into another qualified pension plan, also differs from parental decisions that have resulted in unrealized income being considered for child support purposes. *See, e.g., In re Marriage of Laughlin, supra* (interest imputed on portion of capital gain from sale of business used to construct addition to home and pay mortgages); *In re Marriage of Bregar, supra* (interest imputed on portion of capital gain from stock sale used to reduce margin account debt).

The capital gains received in those cases were income, and the gains would have generated additional interest income without a change to their character, but for the parents' decisions to expend a portion of them. *Cf. In Interest of A.M.D.,* 56 P.3d 1184 (Colo. App.2002)(*cert. granted* Nov. 4, 2002)(interest would be imputed on inheritance, although inheritance itself not treated as income). Again, in contrast, father's retirement account here is not income, nor does the record show it would generate income unless its character were changed by his election of a lump sum distribution or monthly annuity payments.

We discern no basis in § 14–10–115(7)(a)(I)(A) or prior decisions to consider unrealized income for child support purposes solely because a parent could liquidate an asset or change its character into an asset capable of producing income. Mother does not assert that father acted unreasonably or in bad faith. The fact that he had no discretion to treat the VERP benefit separately from the remainder of his retirement account suggests that he was not trying to avoid child support obligations.

Although contrary authority exists in other jurisdictions, the analysis of those cases gen-

erally rests on either particular statutory language defining what may be considered in determining gross income for purposes of child support, or the recognition that an asset already capable of producing income is underperforming. *See generally* Morgan, *supra*, § 2.03[e][17] at 2–46 (collecting cases). *Cf. In re Marriage of Destein*, 91 Cal.App.4th 1385, 111 Cal.Rptr.2d 487 (2001)(court acted within its discretion in imputing rate of return on father's non-income producing real estate).

Here, the record does not indicate that father's retirement account produced income. The rollover of his entire account into another qualified pension plan did not change its character from a pension or retirement benefit. Thus, because the VERP benefit retained its character as a pension or retirement benefit, the definitional requirement of actual payment also continued to apply. Treating the VERP benefit as unrealized income because father could have changed the character of his entire retirement account to income, by analogy to out-of-state cases recognizing that a passive asset could be liquidated to produce income, would be contrary to the payment limitation in the definition of "pensions."

 Several other statutory income categories expressly require payment or receipt: "payments *received* as an independent contractor"; "moneys *drawn* by a self-employed individual"; "social security benefits *actually received*"; "taxable *distributions* from general partnerships"; and "alimony or maintenance *received*." Section 14–10–115(7)(a)(I)(A) (emphasis supplied). Hence, we adhere to our conclusion that the definition of "pensions" similarly requires actual payment to the recipient, notwithstanding an unexercised option to elect payment.

In addition, we agree with the trial court that treating pensions and retirement benefits as gross income for child support purposes based on a right to withdraw would raise difficult problems for employees who roll over their retirement accounts when they change employers, but have the option of taking a lump sum distribution. Employees who can elect between a lump sum distribution of their retirement accounts or periodic annuity payments upon normal retirement would be in a similar predicament.

*In re Marriage of Tessmer, supra*, does not require a different conclusion. *Tessmer* relied on the express inclusion in "gross income" of "dividends" and "interest," § 14–10–115(7)(a)(I)(A), and dealt with the tension between withdrawal penalties and treatment of earnings that could be withdrawn as income.

Although the division in *Tessmer* assumed that the accountholder could withdraw the interest and dividends, albeit subject to penalty, that withdrawal would not involve a change in character of the amounts withdrawn. Furthermore, neither interest nor dividends are defined in terms of payment, as are "pensions." Interest accrues continuously, although it is paid periodically. Dividends may be declared, but accumulated rather than paid, in the discretion of a board of directors.

Accordingly, we conclude that the VERP benefit should not be treated as gross income for child support purposes merely because father could have elected a lump sum distribution or monthly annuity payments.

## II. Public Policy

Mother further asserts policy considerations favoring child support dictate that money subject to an employee's control, even if voluntarily contributed to the employee's retirement account, should be treated as gross income. *See Ennis v. Venable, supra*. However, we need not address this argument because we have concluded that the VERP benefit does not fall in the category of a voluntary employee contribution.

## III. Deviation from Guidelines

Finally, mother contends the trial court erred in upholding that portion of the magistrate's order which deviated from the guidelines. We discern no grounds for reversal.

 When a deviation is justified, the guidelines require that the presumed support obligation first must be calculated before the extent of the deviation can be determined. *In re Marriage of Tessmer, supra*.

Here, however, because we have concluded that the VERP benefit was not includable gross income, the result would be the same as that reached by the magistrate, who "deviated" from the guidelines pursuant to 14–10–115(3)(a), C.R.S.2002, in excluding the VERP benefit from father's gross income.

Order affirmed.

Judge ROTHENBERG and Judge TAUBMAN concur.